**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Alexandra Briyana Brice, | ) | |
| | ) | |
| Plaintiff, | ) | **SCREENING ORDER** |
| | ) | |
| vs. | ) | |
| | ) | |
| Bethany Retirement Living, | ) | Case No. 1:24-cv-033 |
| | ) | |
| Defendant. | ) | |

Plaintiff Alexandra Briyana Brice ("Brice") is a self-represented litigant suing her former employer, Defendant Bethany Retirement Living (Bethany"). The court previously granted Brice leave to proceed in forma pauperis. Brice's Complaint is therefore subject to initial review pursuant to 28 U.S.C. § 1915(e)(2). Having now completing the initial review, the court finds Brice's Complaint deficient for the reasons discussed below. Before dismissing the Complaint, the court shall first afford Brice an opportunity to amend it.

I.     **BACKGROUND**

Brice is a 44 year old African-American woman. (Doc. No. 6-1). She is also a nurse. (Id.). She was employed in that capacity by Bethany when the events giving rise to this action allegedly occurred. (Id.). The following facts are taken from Brice's pleadings. For the purposes of this order, they are presumed to be true.

Chelsea, a Caucasian nurse at Bethany, made dismissive comments to Brice in front of an "orientee" on the morning of October 17, 2022. (Doc. No. 6-3 at pp. 1 and 2). Brice described her encounters with Chelsea on October 17, 2024, as follows in her Complaint.

> On Monday October 17, 2022, I was assigned to work on Maplewood at the
> University Campus for a 12hrs shift 6:00 AM - 6:30 PM, Upon arrival about 6:00 am

1

> Chelsea K, a young White Nurse was already there and she did the assignment, since she is the regular 8hrs Day Nurse for Maplewood West.
>
> As I sat down about to open my computer after listen to report, Chelsea yelled not in a rude tone" Alex you training today", I asked Chelsea can she train instead, since she is regular on the floor, Chelsea said "Okay." About 9:00 am after my morning medications pass was done, I went in the report room to look at the schedule; to see if I was being pulled at 2:00 pm to different floor or Campus since I was a resource nurse and was doing a 16 hrs. shift that day. It was then, I noticed next to my name it said in parentheses Orientee. I was approached by Chelsea and the Orientee (White Female) who were seating at the nursing station chatting and I said to them politely "Chelsea, I looked at the schedule and noticed she is schedule to be oriented on the EAST side with me, can I have her come to the East Side, so I can tell her about the residents and how they take their medications and so on." Chelsea replied in a rude tone of voice "Dude, she is not going to pass you meds for you". I felt very disrespected and embarrassed not only Chelsea called me "Dude" and Chelsea implied that I was not going to teach the orientee, but have the orientee do my meds pass for me". I said to Chelsea "ia m done with my morning meds pass, why would I need her to pass my meds for me". The Orientee (White Female) then told me "I am fine, I want to stay with her, I worked the East side with another nurse this pass Saturday, she already thought me how they take their medications and don't need to come over there". Chelsea was still going on being disrespectful.

(Id. (errors in original)). Plaintiff promptly lodged a complaint about Chelsea's conduct with Lexi, the unit manager, who "laugh[ed] it off." (Id. at p. 2).

Brice then lodged a complaint about Chelsea's conduct with Alyssa, the director of nursing. (Id.). Brice also told Alyssa that she wanted to go home as she felt her blood pressure rising and a headache coming on. (Id.). Alyssa was dismissive and told Brice that she should go home if she felt ill. (Id.).

Shortly thereafter, Brice encountered Dawn, the executive director of resident care, who reassured her that an action plan had been set up to address Chelsea's attitude and behavior. (Id.).

Brice did not leave as she started feeling better after visiting with some of her co-workers and getting something to eat. (Id. at p. 3). A couple of hours later Lexi told Brice that she should leave given her earlier statements about feeling ill. (Id.). Alyssa also told to Brice that she should

go home.  (Id.).  Feeling capable of finishing her shift, Brice told Lexi and Alyssa as much and stayed.  (Id.).

While working on October 21, 2022, Brice took it upon herself to correct an error made by the aforementioned "orientee."  (Id.).  According to Brice, the "orientee" had improperly entered an order regarding an antibiotic change and a urine sample into the computerized medication administration record.  (Id.).

On October 22, 2022, Bailey, an on-call manager, texted Brice to advised her that she was being "take[en] off schedule pending an investigation."  (Id.).  Brice asked for more details and was told that there was an ongoing investigation concerning a narcotic and that she needed to report to Bethany at 9:00 AM on October 24, 2022, for a meeting.  (Id.).  Brice subsequently sent an email to Dawn, Carmen, her supervisor, Adam, the executive director of human resources, and Shawn, the CEO, requesting their assistance to no avail.  (Id.). In Brice's words, "none of the White people [she] wrote the Email on Saturday, came to [her] rescue not event Adam or Shawn."  (Id. (errors in original)).

On October 24, 2022, Dawn summoned Brice to the meeting at Bethany.  (Id. at p. 4).  According to Brice, she "was threatened by Dawn [ ] to come in and if [she] didn't come in, [she] can possibly go to jail." (Id.).

At the meeting Dawn, Alyssa, and Bailey interrogated Brice about a report they had received from a Bethany employee (hereafter referred to as "John Doe") that she had taken a resident's Tramodol for a headache. (Id.).  Brice denied any wrongdoing and requested that Adam participate in the meeting.  Brice was eventually sent home. (Id.).

Dawn, Alyssa, Bailey, and Adam called Brice later that day. (Id.).  They shared John Doe's

identity with Brice and further advised Brice that John Doe had also reported that she had made him buy her food while "on the clock." (Id.). After some further discussion, they advised Brice that Bethany was firing her. (Id.)

On November 18, 2024, the North Dakota Board of Nursing (the "Board') contacted Brice to advise that it had received notice from Bethany that she had reportedly taken a resident's Tramodol. (Id). According to Brice, Bethany did not respond to her subsequent inquiries and that the Board eventually dismissed "the case" because Bethany would not allow any investigation. (Id. at pp. 4 and 5).

Almost seven months after her termination, Brice encountered John Doe, who assured her that he had not made the reports that Dawn, Alyssa, Bailey, and/or Adam had attributed to him. (Id.).

Brice filed a charge of discrimination against Bethany with the Equal Employment Opportunity Commission ("EEOC"). (Doc. No. 6-2). On November 29, 2023, the EEOC issued a Determination and Notice of Rights advising Brice that it was not conducting any additional investigation and was not addressing the merit of her charge but that she had a right to file suit within 90 days. (Id.).

Brice initiated the above-captioned action in forma pauperis with the submission of a pro se Complaint on February 23, 2024. (Doc. Nos. 1 and 6). She acknowledges that Bethany "had a legitimate reason to fire [her]" as "[she] was late to work almost the entire week [the underlying events occurred]." (Doc. No. 6-1). However, intimating that her tardiness was not the reason for termination, she asserts that Bethany: (1) discriminated against her on the basis of her gender, race, and age; (2) retaliated against her for reporting Chelsea, and (3) defamed her by falsely reporting

the Board that she had taken a resident's Tramodol.  (Doc. Nos. 6 and 6-1).  She seeks to recover

$25 million in damages. (Doc. No. 6).

**II.      STANDARDS GOVERNING § 1915(e)(2) REVIEW**

Section 1915(e)(2) provides that, notwithstanding financial eligibility, "the court shall

dismiss the case at any time if the court determines that . . . the action . . .  (i) is frivolous or

malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief

against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

When screening a Complaint under 28 U.S.C. § 1915, the court must assume as true all facts

well pleaded in the complaint.  Estate of Rosenberg v. Crandell, 56 F.3d 35, 36 (8th Cir. 1995).  Pro

se and  civil rights complaints must be liberally construed.   Erickson v. Pardus, 551 U.S. 89, 94

(2007) (per curiam) (citation omitted); Bediako v. Stein Mart, Inc., 354 F.3d 835, 839 (8th Cir.

2004) (citation omitted). A "liberal construction" means that if the essence of an allegation is

discernible, the district court should construe the plaintiff's complaint in a way that permits his or

her claim to be considered within the proper legal framework.  Solomon v. Petray, 795 F.3d 777,

787 (8th Cir. 2015).  However, even pro se complaints are required to allege facts which, if true,

state a claim for relief as a matter of law.  Martin v. Aubuchon, 623 F.2d 1282, 1286 (8th Cir. 1980);

see also Ellis v. City of Minneapolis, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam); Martin v.

Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985) ( "[A] pro se complaint must contain specific facts

supporting its conclusions.").  Civil rights complaints cannot be merely conclusory.  Davis v. Hall,

992 F.2d 151, 152 (8th Cir. 1993) (per curiam); Parker v. Porter, 221 F. App'x 481, 482 (8th Cir.

2007) (per curiam); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) .

III.    **DISCUSSION**

Brice has asserted what the court construes as: Title VII claims for racial discrimination, sex discrimination, and retaliation; an ADEA claim for age discrimination; and a state tort claim for defamation.

A.      **Title VII**

Title VII prohibits "employer discrimination on the basis of race, color, religion, sex, or national origin, in hiring, firing, salary structure, promotion and the like." Winfrey v. City of Forrest City, Ark., 882 F.3d 757, 758 (8th Cir. 2018). "Title VII [also] prohibits employers from retaliating against an employee who is engaged in a protected activity, which can be either opposing an act of discrimination made unlawful by Title VII ... or participating in an investigation under Title VII." Hunt v. Nebraska Pub. Power Dist., 282 F.3d 1021, 1028 (8th Cir. 2002); see also Solomon v. Wardlaw Claim Serv., LLC, No. 4:17-CV-92, 2018 WL 3715690, at *3 (N.D. Ind. Aug. 3, 2018) (citing 42 U.S.C. § 2000e-3(a) and Hicks v. Forest Preserve District of Cook County, Illinois, 677 F.3d 781, 787 (7th Cir. 2012), for the proposition that "[u]lawful retaliation in violation of Title VII occurs when an employer takes actions that discriminate against an employee because she has opposed a practice that Title VII forbids, or testified, assisted, or participated in a Title VII proceeding or investigation.").

1.      **Exhaustion of Administrative Remedies**

Title VII requires a plaintiff to exhaust all administrative remedies as a precondition to filing suit in federal court.  See Fort Bend Cty., Texas v. Davis, 139 S. Ct. 1843, 1850-51 (2019) (opining that Title VII's charge-filing requirement is mandatory processing rule); see also Sellers v. Deere & Co., 791 F.3d 938, 943 (8th Cir. 2015) (recognizing that federal anti-discrimination statutes

require plaintiffs to file complaints with the EEOC before commencing a suit in federal court);

Cottril v. MFA, Inc., 443 F.3d 629, 634 (8th Cir. 2006) ("A Title VII plaintiff must exhaust

administrative remedies before bringing suit in federal court. A claimant must first timely file an

administrative charge with the EEOC."); Burkett v. Glickman, 327 F.3d 658, 660 (8th Cir. 2003)

("Before the federal courts may hear a discrimination claim, an employee must fully exhaust her

administrative remedies.").  "Each discrete incident of discriminatory or retaliatory action by an

employer is its own unlawful employment practice for which administrative remedies must be

exhausted."  Murph v. Silver Memories, Inc., No. 8:13CV11, 2013 WL 2147858, at *2 (D. Neb.

May 16, 2013).  "The reason for requiring the pursuit of administrative remedies first is to provide

the EEOC with an initial opportunity to investigate allegations of employment discrimination and

to work with the parties toward voluntary compliance and conciliation." Parisi v. Boeing Co., 400

F.3d 583, 585 (8th Cir. 2005); see also Ray v. Health Consultants Inc., No. 4:19-CV-3052 JAR,

2020 WL 1640359, at *3 (E.D. Mo. Apr. 2, 2020) ("[T]o allow a complaint to encompass allegations

outside the ambit of the predicate EEOC charge would circumscribe the EEOC's investigatory and

conciliatory role, as well as deprive the charged party of notice of the charge, as surely as would an

initial failure to file a timely EEOC charge." (internal quotation marks omitted)).

To exhaust administrative remedies, the claimant must: (1) timely file a charge of

discrimination with the EEOC, setting forth the facts and nature of the charge, and (2) receive notice

of the right to sue from the EEOC. 42 U.S.C. §§ 2000e-5(b), (c), (e). Once an individual receives

notice of the right to sue, she has ninety days in which to file suit.  42 U.S.C. § 2000e-5(f)(1); see

also Stuart v. General Motors Corp., 217 F.3d 621, 630 (8th Cir. 2000) ("In order to initiate a claim

under Title VII a party must timely file a charge of discrimination with the EEOC and receive a

right-to-sue letter.").

Brice did not attach a copy of her EEOC charge of discrimination to her pleading. The copy

of the EEOC's Determination and Notice of Rights that Brice did attach to her pleadings references

her claims but does not identify the type of claims she had asserted or otherwise provide any

information about the substance of her claims. It also does not explicitly identify who Brice had filed

the charge of discrimination against. As a consequence, the court cannot presently ascertain exactly

which claims were presented to and addressed by the EEOC. By extension, the court cannot

ascertain whether Defendant has properly exhausted her administrative remedies as to all of her Title

VII claims.

### 2.   Sex Discrimination

The issue of exhaustion aside, the court finds that Plaintiff has not articulated a plausible

claim for gender discrimination.

Unless a plaintiff can produce direct evidence of sex discrimination, she must establish a

prima facie case by demonstrating "(1) that she is within the protected class; (2) that she was

qualified to perform her job; (3) that she suffered an adverse employment action; and (4) that

nonmembers of her class (the opposite gender in the Title VII sex discrimination context) were not

treated the same." Boone v. Larson Mfg. Co., Inc., 299 F. Supp. 2d 1008, 1017 (D.S.D. 2003)

(citing 42 U.S.C. § 2000e-2(a)(1)).

Here, Brice fails to allege facts sufficient to state a claim under Title VII. Although Brice

argues that she is within a protected class, is qualified to perform her job, and has suffered an

adverse employment action, she makes no alleged no facts to even remotely suggest that her sex or

gender was a factor in her termination. Consequently, she has failed to assert a claim of sex

discrimination for which relief may be granted.

### 3.       Race Discrimination

Brice next claims that she was discriminated against based on her race.  The issue of

exhaustion aside, the court is not ready to conclude that she failed to state a cognizable claim.

To establish a prima facie case of discrimination under Title VII, plaintiff must show that

she: (1) is a member of a protected class; (2) was qualified for her position; and (3) suffered an

adverse employment action under circumstances permitting an inference that the action was the

result of unlawful discrimination.  See Johnson v. Ready Mixed Concrete Co., 424 F.3d 806, 810

(8th Cir. 2005) (citing Habib v. NationsBank, 279 F.3d 563, 566 (8th Cir. 2001)).

Here, Brice has asserted that she is a member of a protected class.  She has also asserted

(implicitly if not explicitly) she was appropriately qualified for her position and she suffered an

adverse employment action mere days after she lodged complaints about a Caucasian co-worker.

She further asserts:

> When anyone accused their white employees of taking drugs, they take then to take
> a drug test.  In my case they hated me so much they fabricated lies against me to
> destroy my life, my career is my life.
>
> * * *
>
> Bethany also wanted me to look worst than Chelsea by fabricating lies to make me
> look like a drug addict since I am Black and was aware of all Chelsea bad nursing
> practices.

(Doc. No. 6-1) (errors in original).[1]  Collectively, these allegations arguably suffice for the purposes

of the court's initial review, provided of course that Brice has exhausted her administrative remedies.

The court shall now turn to Brice's retaliation claim.

---

[1] Brice states elsewhere in her pleadings that "she went and got a drug test at the Sanford ER."  (Doc. No. 6-3 at p. 3).

### 4.   Retaliation

"Title VII's anti-retaliation provision prevents employers from retaliating against employees who have acted to vindicate their statutorily protected rights by reporting harassment or discrimination in the workplace." Brannum v. Missouri Dep't of Corr., 518 F.3d 542, 547 (8th Cir. 2008).  "Thus, an employer may not take adverse action against an employee because the employee has opposed any practice made an unlawful employment practice by [Title VII],  or  made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." Id.  (internal quotation marks omitted).

For the purposes of the court's initial review, the court is not ready to conclude Brice has failed to assert a cognizable retaliation claim provided that Brice can establish that she has exhausted her administrative remedies.  Brice has alleged she reported her coworker, she suffered an adverse employment action, and there is a causal connection between her actions and the adverse employment action that she suffered. The court appreciates that the co-worker's conduct or a report of a coworker's conduct may not necessarily constitute protected activity for purposes of Title VII. However, the court also recognizes that  "a plaintiff employee need not establish that the conduct [s]he opposed was in fact prohibited under Title VII  to satisfy the first element." Brannum, 518 F.3d at 547 (8th Cir. 2008)).

### B.   ADEA

Brice next claims that she was discriminated against because of her age.  The  ADEA, 29 U.S.C. §§ 621 et seq., "prohibits employers from discriminating against any individual on the basis of age with respect to his or her compensation, terms, conditions, or privileges of employment." Jankovitz v. Des Moines Indep. Cmty. Sch. Dist., 421 F.3d 649, 652 (8th Cir. 2005).  When a

plaintiff's claim of age discrimination is not based on direct evidence of intentional discrimination, the plaintiff must establish a prima facie case of age discrimination by showing that "(1) he or she is a member of a protected age group; (2) he or she was qualified for the position he held; (3) despite his or her qualifications, he or she was demoted; and (4) he or she was replaced by a younger person." Id. (citing Ziegler v. Beverly Enterprises-Minnesota, Inc., 133 F.3d 671, 675 (8th Cir. 1998)).

Before filing a complaint in federal court alleging violations of the ADEA, a plaintiff must first exhaust her administrative remedies by filing a charge of discrimination with the EEOC. See Sellers v. Deere & Co., 791 F.3d 938, 943 (8th Cir. 2015); Richter v. Advance Auto Parts, Inc., 686 F.3d 847, 850 (8th Cir 2012);  Parisi v. Boeing Co., 400 F.3d 583, 585 (8th Cir. 2005); see also 42 U.S.C. § 2000e-5(e) and (f) (providing procedures and deadlines for filing charges with the EEOC and, following receipt of a right-to-sue letter, in court); Wilkes v. Washington Univ. School of Medicine, No. 4:06CV1833 MLM, 2007 WL 1040929 at *2 (E.D. Mo. Apr. 3, 2007) ("Exhausting administrative remedies requires timely filing a charge with the EEOC and receiving a right to sue letter.").

Like  Brice's Title VII claims, there is nothing in Brice's pleadings or attachments to them to evince that she has exhausted her administrative remedies with respect to her ADEA claim. Absent a showing that she had satisfied the exhaustion requirement, her ADEA claim is subject to dismissal.

The issue of exhaustion aside, Brice has not asserted a cognizable ADEA claim. Brice's pleadings reflect that she is over age forty and can be understood to allege she was appropriately qualified for her position.  This is sufficient to show that she qualifies for the protections of the

ADEA.  She has also alleged that she suffered an adverse employment action.  However, she has

not presented any facts to even remotely suggest that she suffered an adverse employment or was

otherwise mistreated on account of her age.  Consequently, even if she had exhausted her

administrative remedies, she has failed to state a cognizable ADEA claim.  The court shall next turn

to Brice's defamation claim.

### C.       Defamation

This court has original subject matter jurisdiction over claims for alleged violations of

federal laws.  See 28 U.S.C. § 1331 (federal question jurisdiction) and  28 U.S.C. § 1343(3)

(jurisdiction for enforcement of federal constitutional and statutory rights).[2] It also has supplemental

jurisdiction over state law claims inexorably related or intertwined with claims arising under federal

law. 28 U.S.C. § 1367(a).  However, it may decline to exercise supplemental jurisdiction over such

state law claims if, for example, it has dismissed all claims arising under federal law.  28 U.S.C. §

1367(c)(3).

Brice's claim of defamation is governed by state as opposed to federal law.[3] As it appears

to be factually intertwined with Brice's Title VII and ADEA claims, the court would have

supplemental jurisdiction over it provided that Brice's Title VII and ADEA claims survive initial

---

[2] Federal courts also have subject matter jurisdiction over civil actions between parties with complete diversity of citizenship where the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332(a).  Complete diversity exists when no defendant is a citizen of the same state as any plaintiff.  OnePoint Solutions, LLC v. Borchert, 486 F.3d 342, 346 (8th Cir. 2007).  There does not appear to be complete diversity in this case as Brices submissions indicate that she and Bethany are North Dakota residents.

[3] Under N.D.C.C. ch. 14–02, defamation is classified as either libel or slander. Libel is "a false and unprivileged publication by writing ... which has a tendency to injure the person in the person's occupation." N.D.C.C. § 14–02–03. Slander is "a false and unprivileged publication other than libel, which ... [c]harges any person with crime ... [or][t]ends directly to injure the person in respect to the person's office, profession, trade, or business, ... by imputing to the person general disqualifications in those respects which the office or other occupation peculiarly requires." N.D.C.C. § 14–02–04(1) and (3).

review.

As discussed above, it is presently unclear whether Brice has exhausted her administrative remedies with respect to her Title VII and ADEA claims. A failure on her part to exhaust is grounds for dismissal of her federal claims, which would then empower the court to decline to consider her defamation claim. <u>Hervey v. Cnty. of Koochiching</u>, 527 F.3d 711, 726 (8th Cir. 2008). She has otherwise failed to assert a cognizable Title VII claim for gender discrimination or an cognizable ADEA claim for age discrimination.

## IV.  CONCLUSION

Brice shall have until June 3, 2024, to file an Amended Complaint that addresses the deficiencies in her original Complaint. She should take heed that an Amended Complaint will become the operative pleading once filed and should therefore containall claims along with factual bases for them. Nothing outside of the Amended Complaint will be considered.

Brice should attach a copy of the Charge of Discrimination she filed with EEOC to her response to her Amended Complaint. The Amended Complaint will be subject to further review under 1915(e). A failure on her part to file an Amended Complaint may result in the summary dismissal of this matter.

**IT IS SO ORDERED.**

Dated this 9th day of May, 2024.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court